Argued March 27, removal of ballot measure denied March 29, 1974

SUNDELEAF ET AL, *Petitioners, v.* MYERS,
*Respondent.*

520 P2d 438

*Ridgway K. Foley, Jr.,* Portland, argued the cause for petitioners. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John W. Osburn,* City Attorney for the City of Portland, made appearance and filed a brief as amicus curiae.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN and HOWELL, Justices.

PER CURIAM.

Petitioners are citizens of the state as well as qualified and registered voters. They bring this proceeding to prohibit the Secretary of State from submitting to the voters at the May 28, 1974, primary election two constitutional amendments proposed by the legislature. In the absence of a grant of such relief, they seek to test the sufficiency and clarity of the impartial explanatory matter by which each of the amendments is submitted in the voters' pamphlet to the electors. This explanatory matter is originally prepared by a committee for each amendment which forms and operates under the supervision of the Secretary of State pursuant to the authority of Oregon Laws 1973, Chapter 712, which also provides for testing the sufficiency and clarity of such explanations by original proceedings in this court.

The statute provides a time schedule for the appointment of the committees and the preparation by them of the explanatory matter. The schedule provides for a public hearing before the Secretary of State upon reasonable notice with an opportunity for interested persons to offer suggestions and criticism concerning the committees' proposed explanatory matter. The time schedule was not carried out for either amendment as provided by statute. Because of the delay in the preparation of the explanatory matter petitioners contend there was no opportunity for reasonable notice of the public hearings before the Secretary of State nor the opportunity contemplated by the statute for petitioners and other interested persons to study the committees' suggested material and to investigate its sufficiency and clarity.

Petitioners contend that the explanatory state-

ments represent the only material in the voters' pamphlet the preparation of which may be participated in by interested members of the public and that by virtue of the inadequate notice and untimely hearing petitioners' right to free and effective expression has been violated, the people's right to vote effectively has been interfered with, and they and members of the public have been deprived of procedural due process. They contend that if the court fails to prevent the submission of the constitutional amendments to the voters, the citizens of the state have no effective recourse and the law for such notice and hearing may be violated with impunity.

There is considerable doubt concerning the authority of this court, particularly in an original proceeding, to prevent the submission of the two amendments to the people at the May primary election. Certainly, there is no direct grant of such authority to this court by the legislature in the statute which provides for this original proceeding. The petitioners urge that we have the inherent power and that they have no other effective recourse. We find that, under the circumstances, it is presently unnecessary for us to decide this difficult question. It is apparent that the two proposed constitutional amendments concern matters of great and immediate public interest. Ballot Measure No. 2 concerns the use of what are now constitutionally dedicated highway funds for the fostering of publicly operated mass transit systems. Ballot Measure No. 4 concerns the issuance of bonds to establish a water development fund to be used to develop the water resources of the state. Assuming, but not deciding, that we have the authority to do that which petitioners request, we choose not to exercise that authority. In weighing the public's interest in afford-

ing its individual members their full statutory right to participate in the presentation of the issues to the public through the medium of the voters' pamphlet as against the public's interest in having presented to the voters as soon as possible policy matters of great and immediate public interest, we have no alternative but to choose the latter. We, therefore, decline petitioners' invitation to strike the two measures from the ballot.

We next examine Ballot Measure No. 2 for the purpose of determining whether the committee's impartial explanation of that proposed constitutional amendment is "insufficient or unclear." The explanatory matter as prepared by the committee is as follows:

"This proposal, if passed, would amend Article IX of the Constitution of the State of Oregon to permit use of motor vehicle fuel and registration tax money collected in the State of Oregon to be used for mass transit systems and for financial assistance to persons or property displaced by highway or mass transit construction or other work. This proposal suggests a significant change in use of funds, for the state's highway fund has traditionally been limited to use in the state's highway, park, recreational, scenic or historic site programs. No additional new taxes or increases in existing taxes are proposed in Measure #2.

"Mass transit systems to be assisted by this proposal could include statewide bus systems, rail or air passenger service, as well as city bus systems.

"House Bill 2276, passed by the 1973 Legislature and signed by the Governor, will automatically become effective July 1, 1974, or die depending on whether Ballot Measure #2 is passed or defeated. This bill sets out the guidelines to be used to make funds available to public transportation and limits the amounts of funds to eight per cent of the total

motor vehicle fuel and registration taxes. It further stipulates that the total expended on mass transit is not to exceed the total of registration fee collections for motor vehicles.

"House Bill 2276 establishes the regulations under which the Department of Transportation or another designated agency may draft proposals, accept proposals from cities, counties, or other governmental units, and establish priorities for funding. It also requires that both the need for a system of public transportation and the economic, social, and environmental impact of the proposed system be considered in evaluation of proposals. The bill provides that funds will be available to assist existing publicly owned systems and to assist in the beginning of new systems throughout the state."

Petitioners contend that the language, "this proposal * * * would * * * permit use of motor vehicle fuel and registration tax money * * * for mass transit * * *," is inaccurate. They argue that use is also permitted of the income from motor carrier permits and from fines and overloads. In fact, the funds that may be used for mass transit if the constitutional amendment is passed are motor vehicle fuel taxes and any taxes or excises levied on the ownership, operation or use of motor vehicles. The explanatory matter is not exactly accurate in this respect and should be corrected.

■ Petitioners also contend it is not entirely clear that the eight per cent limitation on the amount of the highway funds that can be used for mass transit purposes is a statutory limitation only and that under the constitutional amendment the percentage of the fund which can be devoted to mass transit may be changed by the legislature or by initiative petition at any time. We believe the criticism is valid and the explanatory statement should be made clearer in this respect.

■ Petitioners also claim that ORS 254.180① and 254.190 have not been complied with in that the estimate of the expenditures of public money which will be required by the passage of the amendment has not been filed with the Secretary of State. The statute authorizing the explanatory statement says nothing concerning the inclusion in the statement of the estimate provided for by ORS 254.180 and 254.190. In addition, there is no provision for the enforcement of ORS 254.180 and 254.190 by an original proceeding in this court. Even if the statutes are applicable, petitioners' contention is not a proper one in this proceeding.

Petitioners also make other contentions concerning the propriety of the explanatory statement. We have considered these contentions and have concluded they are not well taken and that no benefit would be derived by a further discussion of them in this opinion.

---

① "ORS 254.180. Estimate of amount involved on measures proposing expenditure of public money or a reduction of state revenues, imposing a tax or incurring any indebtedness. Whenever any measure involving the expenditure of public money by the state, a reduction of state revenues or the raising of funds by the state by imposing any tax or incurring any indebtedness is proposed by initiative or referred by referendum petition or by the Legislative Assembly, the Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Department of Revenue, shall estimate in dollars the amount of expenditure, reduction in state revenues, tax revenue or indebtedness and interest which will be required to meet the provisions of the measure should it be enacted. Such estimate shall state the recurring annual amount involved or, if the measure does not involve such a recurring annual amount, the total amount. The estimate shall be certified by at least two of the officials named in this section and, not later than the ninetieth day before the election at which the measure is to be voted upon, it shall be filed, with the data upon which it is based, in the office of the Secretary of State. Thereafter it shall be available for public inspection. If the measure involves only administrative expenses not exceeding $50,000 per annum, the estimate shall not be printed in the voters' pamphlet or on the ballot as prescribed in ORS 254.190."

We, therefore, conclude that the proposed impartial explanatory matter concerning Ballot Measure No. 2 for inclusion in the voters' pamphlet should be modified as follows:

## "PROPOSED EXPLANATION FOR BALLOT MEASURE #2

"Submitted by:

Esther L. Loy    Earl Pryor    Jack R. Kalinoski
Robert H. McKellar    William E. Roberts

"This proposal, if passed, would amend Article IX of the Constitution of the State of Oregon to permit use of motor vehicle fuel taxes and any taxes or excises levied on the ownership, operation or use of motor vehicles collected in the State of Oregon to be used for mass transit systems and for financial assistance to persons or property displaced by highway or mass transit construction or other work. This proposal suggests a significant change in use of funds, for the state's highway fund has traditionally been limited to use in the state's highway, park, recreational, scenic or historic site programs. No additional new taxes or increases in existing taxes are proposed in Measure #2.

"Mass transit systems to be assisted by this proposal could include statewide bus systems, rail or air passenger service, as well as city bus systems.

"House Bill 2276, passed by the 1973 Legislature and signed by the Governor, will automatically become effective July 1, 1974, or die depending on whether Ballot Measure #2 is passed or defeated. This bill sets out the guidelines to be used to make funds available to public transportation and limits the amounts of funds to eight per cent of the total motor vehicle fuel and registration taxes. It further stipulates that the total expended on mass transit is not to exceed the total of registration fee collections for motor vehicles. These limitations on the amount of the highway funds that may be used for

mass transit are only statutory limitations and may be changed by future legislative or initiative action.

"House Bill 2276 establishes the regulations under which the Department of Transportation or another designated agency may draft proposals, accept proposals from cities, counties, or other governmental units, and establish priorities for funding. It also requires that both the need for a system of public transportation and the economic, social, and environmental impact of the proposed system be considered in evaluation of proposals. The bill provides that funds will be available to assist existing publicly owned systems and to assist in the beginning of new systems throughout the state."

We have examined Ballot Measure No. 4 to determine whether the committee's impartial explanation of that proposed constitutional amendment is insufficient or unclear. The contentions petitioners make concerning the explanatory statement either have already been considered because they were also made concerning Ballot Measure No. 2 or are trivial in our opinion. We therefore approve the committee's explanatory statement for Ballot Measure No. 4.

The Secretary of State is directed to publish in the voters' pamphlet the committee's explanatory matter for Ballot Measure No. 2 as amended by this court, and similarly to publish the committee's explanatory matter for Ballot Measure No. 4 without modification.